UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVIN PERRY,

        Plaintiff,

v.

UNKNOWN BARTOW, *et al.*,

        Defendants.

                              /

Case No. 1:24-cv-724

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Devin Perry, a prisoner in the custody of the Michigan Department of Corrections (MDOC). The incident occurred at the MDOC's Carson City Correctional Facility (DRF). Plaintiff's complaint (ECF No. 1) listed seven defendants who have been identified as follows: Sgt. Amber Bartrum (named as "Unknown Bartrow"); Corrections Officer (CO) Garrison Bohen (named as "Unknown Bowen"); CO Luke O'Dell (named as "Unknown Odell"); CO Timothy Leonard (named as "Unknown Leonard"); CO Richard Myers (named as "Unknown Meyers"); CO Matthew Godell (named as "Unknown Godell"); and, Sgt. Lucas Shutt (named as "Unknown Schultz"). Plaintiff's complaint also listed three "Doe" defendants, Unknown Parties #1, #2, and #3. This matter is now before the Court on defendants' motion for summary judgment on the basis of exhaustion (ECF No. 13). Plaintiff did not oppose the motion.

    **I.**    **Background**

Defendants have fairly summarized plaintiff's allegations as follows:

> Perry alleges that, on April 22, 2024, he was in a multi-prisoner fight, and three John Doe Corrections Officers (CO) tased him even though he complied with

1

> orders to stop; that he was then moved to a segregation shower, whereupon he told CO Garrison Bohen, CO Luke O'Dell, CO Richard Myers, CO Matthew Godell, and Sgt. Lucas Schutt that he needed to use the bathroom but they did not allow him to do so, and he defecated on himself as a result; and that he informed Sgt. Amber Bartrum, Sgt. Shultz, CO Bohen, CO O'Dell, CO Timothy Leonard, CO Godell, and CO Myers that he was experiencing suicidal thoughts, but they did not contact healthcare for him. (*Id.*) . . .

Defendants' Brief (ECF No. 14, PageID.54). Plaintiff alleged violations of his rights under the First, Eighth, and Fourteenth Amendments, and seeks compensatory damages, punitive damages, and other relief. Compl. at PageID.7-9.

## II. Summary Judgment

### A. Legal standard

Defendants have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

2

> significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, plaintiff did not file a response in opposition to the motion for summary judgment. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

3

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective September 25, 2023). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ W, Y, and CC. The Policy Directive provides the following directions for completing grievance forms:

> The issue should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ Y (emphasis in original). Within five business days after attempting to resolve a grievable issue with appropriate staff, the prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ CC. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator. *Id.* at ¶ JJ. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ NN.

### 3. Discussion

The docket sheet reflects that plaintiff filed this lawsuit on July 15, 2024 (ECF No. 1).[1] Defendants point out that plaintiff did not exhaust any grievances through Step III before filing this lawsuit. *See* MDOC Prisoner Step III Grievance Report (ECF No. 14-3, PageID.75) (showing that plaintiff did not file any Step III grievances from January 1, 2018 through August 5, 2024). In short, there is no evidence that plaintiff exhausted any grievance through Step III before he filed this lawsuit. Based on this record, plaintiff did not properly exhaust a grievance to support his claims against any of the defendants. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.

### III. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment on the basis of exhaustion (ECF No. 13) be **GRANTED** and that this action be **DISMISSED**.

Dated: July 7, 2025                                        /s/ Ray Kent
                                                           RAY KENT
                                                           United States Magistrate Judge

---

[1] Under the prison mailbox rule, a prisoner's court papers are deemed filed at the time he "delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). "Under this relaxed filing standard, a *pro se* prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (internal citations omitted). Defendants point out that under the prison mailbox rule, plaintiff's complaint was filed as early as June 30, 2024 (when plaintiff signed and dated the complaint) (PageID.9). *See* Defendants' Brief at PageID.54, fn. 1).

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).